UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WEISLAW SIKORSKI | CIVIL ACTION |
| VERSUS | NO: 02-3603 |
| HALLIBURTON ENERGY SERVICES, INC., *ET AL.* | SECTION: "S" (2) |

### ORDER AND REASONS

**IT IS ORDERED** that defendant Atwood Oceanics, Inc.'s Rule 50(b) Motion for Judgment as a Matter of Law after Verdict (Document 66), based on the statute of limitations, is hereby **GRANTED.**

**A.     Background.**

On December 5, 2002, plaintiff Weislaw Sikorski sued his employer, Halliburton Energy Services, Inc., and the owner of the vessel *Atwood Hunter*, Atwood Oceanics, Inc.  Sikorski alleged that during the five weeks he worked as a member of the *Atwood Hunter*'s crew, he "sustained numerous falls" because of the presence of "drilling fluids on the decks and on the ladders."[1]  Sikorski alleged that:

---

[1]     Complaint at ¶ 9.

1

> At the end of five weeks, Complainant sought time off because of his injuries, stress and tension, but was advised by his superior at Sperry-Sun Drilling Services that he should work one more week or otherwise he was fired.  At this point, December 6, 1999, Complainant's blood pressure rose to such a degree as to render it unsafe for him to continue to work and since that time he has been totally disabled as a result of the knee and lower back injuries which were severely aggravated by his work and by the hypertension produced by the long hours on board the ATWOOD HUNTER without any relief whatsoever.  On December 6, 1999, Complainant's condition became such that he had to be evacuated from the ATWOOD HUNTER.[2]

Atwood Oceanics answered Sikorski's suit, asserting as its "Second Defense" that Sikorski's claim was "barred by prescription and/or laches."[3]

In the Pretrial Order, Sikorski stated that his injuries occurred "[o]n or around December 6, 1999" when he "slipped and fell in drilling mud and drilling fluid that was present on the drill floor."[4]  Atwood Oceanics made no mention of the statute of limitations or laches in the Pretrial Order.

Sikorski proceeded to trial before a jury against Atwood Oceanics on his claim of vessel negligence pursuant to 33 U.S.C. § 905(b).[5]  After Sikorski rested, Atwood Oceanics moved for judgment as a matter of law,[6] arguing for the first time that Sikorski's claim had prescribed under 46 U.S.C. App. § 763a because Sikorski's claim accrued on or before December 4, 1999.  The court deferred ruling on the motion.  The parties then agreed to bifurcate the trial and submit one interrogatory to the jury:  whether plaintiff had "proved by a preponderance of the evidence that

---

[2] *Id.* at ¶ 11.

[3] Answer at p. 1.

[4] Pretrial Order (Document 43) at p. 4.

[5] Prior to trial, the court granted summary judgment to Halliburton on Sikorski's claim against it, finding that Sikorski was not a seaman under the Jones Act (Document 36).

[6] Document 60.

2

he sustained an injury or aggravation of a pre-existing injury aboard the ATWOOD HUNTER between November 15 and December 6, 1999?"  The jury responded "Yes."

Following the jury's verdict that an injury occurred on the *Atwood Hunter* between November 15 and December 6, 1999, defendant presented its evidence, and the remainder of the case was submitted to the jury.  The jury returned its verdict, finding that Atwood Oceanics was negligent, and that its negligence was the proximate cause of Sikorski's injuries.  The jury awarded Sikorski $590,000, which was reduced by his 30% contributory negligence.  In order to address the motion for directed verdict, an interrogatory to the jury, agreed to by both sides, asked:  "Did Weislaw Sikorski sustain an injury or aggravation of pre-existing injury to his right knee and/or low back after December 4, 1999?," to which the jury answered "No."  The court thereafter entered judgment in favor of Sikorski against Atwood Oceanics in accordance with the jury's verdict.[7]  Atwood Oceanics has now moved for judgment as a matter of law under Rule 50(b).

**B.     Analysis.**

46 U.S.C. App. § 763a provides:

> Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

Atwood Oceanics contends that this limitations provision bars Sikorski's suit, because the cause of action accrued on or before December 4, 1999, and suit was not filed until December 5, 2002.

---

[7]     Document 65.

### 1.  Did Atwood Oceanics waive its ability to assert the limitations bar?

It is undisputed that defendant did not include any reference to the statute of limitations barring the action in the pretrial order.  Sikorski argues that because "statute of limitations" is listed as an affirmative defense in Rule 8(c), Atwood Oceanics waived its right to assert the statutory bar of § 763a by failing to include it in the pretrial order.

In *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112 (5th Cir. 1983), the Fifth Circuit examined a similar argument in the context of the limitations provision of the Federal Employers Liability Act, 45 U.S.C. § 56, which provides that "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."  The *Emmons* defendant did not include a statute of limitations defense in the pretrial order.  At trial, after the plaintiffs' testimony provided a basis for arguing that he filed suit too late, defendant moved for a directed verdict on the grounds that the plaintiff's claim was barred by § 56.  Plaintiff argued that defendant had waived the ability to raise limitations by failing to include that issue in the pretrial order.  The Fifth Circuit noted that instead of being an affirmative defense, "[c]ompliance with 45 U.S.C. § 56 is a condition precedent to an injured employee's recovery in a FELA action." *Id.* at 1117.  Accordingly, even though the defendant had not referred to § 56 in the pretrial order, the *Emmons* court held that defendant had not waived its right to assert its bar:

> The limitations issue was not listed by Southern Pacific in the pretrial order. Nothing in Fed. R. Civ. P. 16, however, "suggests that a party waives or admits an issue as to which his opponent has the burden of proof by failing to include the issue in his pretrial stipulated list of remaining issues."  Emmons had the burden to prove that his cause of action was commenced within three years after he realized that his ankle problem was work related.

*Id.* at 1118 (citation omitted).

The relevant language of 45 U.S.C. § 56 is identical to that of 46 U.S.C. App. § 763a – no action may be "maintained" unless it is "commenced within three years from the date the cause of action accrued." Courts have interpreted the two statutes together,[8] and the Fifth Circuit has relied upon *Emmons* in holding that under § 763a the burden is "on the claimant to allege and to prove that his cause of action was commenced within the three-year period." *Crisman v. Odeco*, 932 F.2d 413, 416 (5th Cir.), *cert. denied*, 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 278 (1991).

The court finds that, under the reasoning of *Emmons*, Atwood Oceanics did not waive its right to assert the bar of § 763a by failing to include it in the pretrial order, and that Sikorski has the burden of proving his claim was instituted timely.[9]

### 2. When did Sikorski's cause of action accrue under §763a?

Because no action may be asserted under § 763a unless it is "commenced within three years from the date the cause of action accrued," the key issue is when Sikorski's cause of action accrued. *See White v. Mercury Marine*, 129 F.3d 1428, 1431 (11th Cir. 1997) ("'Accrue' is the operative word, the marking point that gives the statute its bite. Unfortunately Congress did not

---

[8] *See Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 230 n. 5 (5th Cir. 1984) (noting that "[w]e have repeatedly applied the same standard for the accrual of claims brought pursuant to the FELA, FTCA [Federal Tort Claims Act] or 42 U.S.C. § 1983," and applying that standard to § 763a).

[9] In support of his argument that Atwood Oceanics waived its ability to raise § 763a by failing to reference the statute in the pretrial order, Sikorski relies on *Youren v. Tintic School District*, 343 F.3d 1296 (10th Cir. 2003). *Youren* held that a defendant waived a statute of limitations defense to a claim under the Utah Whistleblower Act by failing to include it as an affirmative defense in the pretrial order. *Youren* is distinguishable because the court recognized that unlike the statute at issue in *Emmons*, a claim under the Utah Whistleblower Act is not "predicated on the filing of suit within the limitations period." *Id.* at 1303.

define 'accrue,' and ths failed to specify the depth of the bite."). Sikorski argues that his cause of action accrued on December 5, 1999, when he first began experiencing pain from slips occurring prior to that date.

Sikorski testified at trial that he began experiencing pain after arriving on the *Atwood Hunter* on November 15, 1999, and that he saw the medic on the vessel on November 18, 1999, November 27, 1999, and December 1, 1999 to receive medication because his back and leg were hurting.[10] Sikorski testified that he was constantly slipping on the deck of the vessel during this period:

> Sir, each time you go for 12 hours each day, you go to the same place and then coming back, during this period of 12 hours they move the thing around, the rig, the pipes, supplies. So you dodging this, you going around, and you have the motion of the rig at the same time. I can't tell you how many times I slipped and catch myself, but I know I did it.[11]

Sikorski also testified that he recalled "slipping on the rig" in some corrosive drilling mud that spilled out when he changed some sensors on December 4, 1999.[12] Sikorski said that "When I slip and fell on my knee, I brace my back against some kind of a metal object behind me. So I didn't completely fall. But I just fell backwards and lean against something. After I finish my tower, my hitch, the 12 hours, I feel really really bad like, like the pull something or hurt something."[13]

Plaintiff does not argue that his injuries occurred subsequent to December 4, 1999. He

---

[10] Trial testimony of Weislaw Sikorski, May 9, 2005, at 47-48, 83.

[11] *Id.* at 81.

[12] *Id.* at 39-40.

[13] *Id.* at 40.

does not ask the court to find the record does not support the factual finding of the jury on that issue. Rather, he argues only that he became aware of the pain in his back on December 5, 1999, which he argues should be the date the cause of action accrued:

> The vital testimony of Wes Sikorski is that he only became aware of a physical injury for which he brought a law suit, after he came off tower on the 5th of December. Awareness of pain and thereafter injury after he came off tower on December 5 would have put the accrual on the 5th of December, 1999. That became the date of accrual.
>
> Most cases involve an injury which is manifest contemporaneously with a traumatic event. That did not occur in this case. The injury became manifest on the 5th of December after he came off duty.
>
> The alleged accident where Mr. Sikorski allegedly bumped his knee and hurt his back occurred according to the jury's conclusion before December 5. It appears in the record that December 4 was the date.[14]

As a general rule, "a cause of action for a tort accrues when there has been an invasion of the plaintiff's legally protected interest." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 229 (5th Cir. 1984). The Fifth Circuit has refined this general principle into two rules:

> This Court uses one of two rules to determine when the statute of limitations begins to run. The "Time of Event Rule" applies "if some injury is discernable when the tortious act occurs." Under this rule, the cause of action accrues when the harmful event occurs. The "Discovery Rule" applies when the plaintiff has sustained "a latent injury which either is not or cannot be discovered until long after the tortious act that caused the injury has occurred." Under this rule, the cause of action accrues "on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause."
>
> The Discovery Rule applies only to "pure latent injury" cases: cases in which "the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred." If the plaintiff "has sustained both immediate and latent injuries caused by a noticeable, traumatic occurrence," he has a "traumatic event/latent manifestation" case and the Time of Event rule applies. In a traumatic event/latent manifestation case, "the plaintiff realizes both that he is injured and what is responsible for causing the injury. The full extent of the harm, however, has not become manifest."

---

[14] Sikorski's "Memorandum in Opposition to Judgment as a Matter of Law on Account of Alleged Running of Statute of Limitations" (Document 70) at p. 8.

*Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 58-59 (5th Cir. 1991).  The Time of Event Rule and the Discovery Rule essentially attempt to determine when a plaintiff "became aware of or had a reasonable opportunity to discover the critical facts of his injury and its cause."  *Albertson*, 749 F.2d at 229; *see also Crisman*, 932 F.2d at 416 (cause of action accrues under § 763a "when a plaintiff has a reasonable opportunity to discover his injury, its cause, and the link between the two").

In most instances, the Time of Event rule applies, regardless of whether plaintiff "later discovers that his injuries are more serious than originally thought."  *Albertson*, 749 F.2d at 229; *Clay v. Union Carbide Corp.*, 828 F.2d 1103, 1106 (5th Cir. 1987).  Courts have typically applied the Discovery Rule only in three situations, when a "latent injury which either is not or cannot be discovered until long after the tortious act that caused the injury has occurred":

> The pure latent injury case ordinarily arises in one of three situations:  a suit by a worker who contracts an occupational disease, a medical malpractice suit by a patient or who discovers an injury long after the negligent medical treatment has been administered, or a product liability suit by a consumer of a drug or other medically related product who discovers a side effect from the use of the defendant's product.  In each of the pure latent injury cases, the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred.

*Albertson*, 749 F.2d at 229-30.  The discovery rule "was initially articulated and has had its greatest acceptance in the occupational disease case," where a worker does not realized he has been injured "until years after he was initially exposed to the substance causing the disease."  *Id.* at 230;[15] *see also Urie v. Thompson*, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (holding that under FELA a worker exposed to a toxic substance such as silica dust over time

---

[15] The *Albertson* court listed asbestosis, polyvinyl chloride poisoning, and silicosis as examples of latent diseases to which the discovery rule had been applied.  *Albertson*, 749 F.2d at 230 n. 4.

becomes "'injured' only when the accumulated effects of the deleterious substance manifest themselves"). Additionally:

> In each of the pure latent injury cases set out above, the plaintiffs were the victims of postponed awareness of their injury, the cause of their injury, or both their injury and its cause. Logic and sound jurisprudence mandate the conclusion that a plaintiff's cause of action does not accrue under these circumstances until the injury and the cause are knowable. This conclusion merely reflects the reluctance of courts to charge plaintiffs who had no indication that they were victimized by a tortfeasor with knowledge of what the Supreme Court characterized over forty-five years ago as the "unknown and inherently unknowable."

*Albertson*, 749 F.2d at 231.

The Fifth Circuit has never applied the discovery rule to a traumatic injury case. The justification for application of the discovery rule is absent in this case.

Accordingly, the court finds that the Time of Event rule applies. Because the jury found that Sikorski did not sustain an injury after December 4, 1999, and his suit was not commenced until December 5, 2002, his claim is barred by the three year limitations period of § 763a.

### 3. Does laches apply?

Sikorski argues that even if he filed suit one day too late, his suit is viable because under the equitable doctrine of laches, the one day delay was not unreasonable and defendant has not been prejudiced.

Prior to the enactment of § 763a in 1980, "the admiralty doctrine of laches . . . controlled the timeliness of maritime personal injury actions." *Butler v. American Trawler Co., Inc.*, 887 F.2d 20, 22 (1st Cir. 1989). Congress' intention in enacting § 763a was "to establish a uniform period of limitations for all suits on maritime torts, and to end reliance on the doctrine of laches." *Usher v. M/V Ocean Wave*, 27 F.3d 370 (9th Cir. 1994).

In *Cooper v. Diamond M Co.*, 799 F.2d 176, 178 (5th Cir. 1986), *cert. denied*, 481 U.S.

9

1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987), the Fifth Circuit applied § 763a to a plaintiff's claim arising out of an accident that occurred a year and a half prior to the enactment of § 763a, holding that "a claim which accrued prior to the date of passage of §763a remains viable for three years after the date of passage of that statute and thereafter succumbs to the absolute bar impressed by Congress." *Id.* at 372.  Accordingly, laches no longer applies, and § 763a governs the time within which a plaintiff may bring suit.  *Id.*[16]

**C.     Conclusion.**

Defendant Atwood Oceanics, Inc.'s Rule 50(b) Motion for Judgment as a Matter of Law after Verdict is granted.

New Orleans, Louisiana this  16th   day of August, 2005.

_____
**Mary Ann Vial Lemmon
United States District Judge**

---

[16]     *See also Grimes v. Owens-Corning Fiberlass Corp.*, 843 F.2d 815, 817 n. 4 (4th Cir.) (enactment of 763a represented a "change from laches to a federal statute of limitations"), *cert. denied*, 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 211 (1988); *Fordham v. Belcher Towing Co.*, 710 F.2d 709 (11th Cir. 1983) ("Prior to the enactment of 46 U.S.C.A. § 763a, there was no absolute cutoff date for bringing of suits such as this.  Courts applied the doctrine of laches...."); *Dolling v. Am[era]da Hess Corp.*, 83 F. Supp. 2d 843, 845 n. 1 (S.D. Tex. 2000) (refusing to consider application of laches to plaintiff's suit because § 763a applied).